**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**MARTINSBURG**

| | |
|---|---|
| **TIMOTHY TYRONE BYERS, JR.**, | |
| **Petitioner,** | |
| **v.** | **CIVIL ACTION NO.: 3:21-CV-17** |
| | **CRIMINAL ACTION NO.: 3:18-CR-62** |
| | **(JUDGE GROH)** |
| **UNITED STATES OF AMERICA,** | |
| **Respondent.** | |

## REPORT AND RECOMMENDATION

### I.   INTRODUCTION

On February 3, 2021, *pro se* Petitioner, Timothy Tyrone Byers, Jr. ("Petitioner"), filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. ECF No. 140.[1] Because Petitioner's claims are without merit, the undersigned recommends that Petitioner's Motion be DENIED and DISMISSED WITH PREJUDICE.

### II.   FACTUAL AND PROCEDURAL HISTORY

#### A.   Petitioner's Conviction and Sentence

On November 20, 2018, Petitioner was indicted for bank robbery in violation of 18 U.S.C. § 2113(a).  ECF No. 1.  On January 28, 2019, Petitioner filed a *pro se* motion to appoint new counsel, which was denied on February 25, 2019 after the district court held a hearing on the matter.  ECF Nos. 19, 59.  At the same hearing, Petitioner moved to

---

[1] All CM/ECF references refer to Criminal Action No. 3:18-CR-62, unless otherwise noted.

proceed *pro se*, and the court also denied that motion.  ECF No. 57.  On March 5, 2019, Petitioner signed a plea agreement, and pled guilty to Count One of the Indictment on March 6, 2019.  ECF Nos. 97, 99.  On June 3, 2019,[2] the district court sentenced Petitioner to 240 months imprisonment and a 3-year term of supervised release.  ECF Nos. 103, 106.

### B.    Appeal

On June 17, 2019, Petitioner filed a notice of appeal.  ECF No. 108.  Petitioner's counsel filed an Anders[3] brief indicating that she had identified no meritorious issues for appeal but "identifying as potential issues for review whether: (1) Byers' sentence is reasonable; and (2) the district court had jurisdiction over Byers' prosecution."  ECF No. 125 at 2.  Additionally, Petitioner filed a supplemental *pro se* brief in which he: (1) challenged the district court's jurisdiction over his prosecution; (2) complained that he was forced to plead guilty because his attorney refused to challenge the court's jurisdiction; and (3) asserted that the district court erroneously denied his motion for a new attorney. Id. Finding no error, the Fourth Circuit affirmed the conviction, rejecting each of Petitioner's arguments.  Id.  On November 6, 2020, Petitioner filed a petition for a *writ of certiorari* to the United States Supreme Court, which was denied on January 11, 2021. ECF Nos. 138, 139.

### C.    Petitioner's § 2255 Motion

Petitioner now challenges his conviction on two grounds.  First, Petitioner claims his counsel was ineffective because she failed to appeal the denial of Byers' motion for

---

[2]  Although the judgment was entered by the District Court on June 3, 2019, it was not filed by the Clerk until June 6, 2019.

[3]  Anders v. California, 386 U.S. 738 (1967).

new counsel.  ECF No. 140 at 5, 140-1 at 1 – 2.  Petitioner asserts that his counsel's actions violated both his Fifth and Sixth Amendment rights.  ECF No. 140-1 at 2.  Second, Petitioner claims his plea was involuntary and that "if the district court had allowed petitioner to represent himself [ ] or [allowed] him [his] attorney of choice he would have never [pled] guilty and proceeded to trial."  Id. at 3.  Petitioner asserts that this alleged error was structural and deprived him of his Constitutional rights.  Id.  In the conclusion to his memorandum, Petitioner acknowledges that his guilty plea included a waiver of rights, but claims that his waiver was "unknowing".  ECF No. 140-1 at 3.

The United States filed a response to Petitioner's motion on February 25, 2021, which argued that both of Petitioner's grounds should be dismissed as he is "merely seeking to relitigate a claim that has been decided" on direct appeal, and is now precluded from collateral review.  ECF No. 146 at 3, 5.

Petitioner's reply filed on March 16, 2021, argues that his appellate counsel was ineffective when she failed to raise a Faretta[4] claim regarding the district court's denial of Petitioner's right to self-representation.  ECF No. 147 at 2.  Petitioner also contends that an evidentiary hearing is required.  Id.

### III.   LEGAL STANDARD

#### A.   Review of Petitions for Relief

Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and this Court's local rules, this Court is authorized to review such petitions for relief and submit findings and recommendations to the District Court. This Court is charged with screening Petitioner's case to determine if "it plainly appears from the motion, any attached exhibits, and the

---

[4] Faretta v. California, 422 U.S. 806 (1975).

record of prior proceedings that the moving party is not entitled to relief." Rule 4(b), Rules Governing Section 2255 Cases in the U.S. District Courts.

### B.    Pro Se Litigants.

Courts must read *pro se* allegations in a liberal fashion and hold those *pro se* pleadings "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972).  Pursuant to 28 U.S.C. § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief.  A complaint is frivolous if it is without arguable merit either in law or in fact.  Neitzke v. Williams, 490 U.S. 319, 325 (1989) (superseded by statute).  The Supreme Court in Neitzke recognized that:

> Section 1915(d) is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11. To this end, the statute accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.

490 U.S. at 327.

### C.    Motions made Pursuant to 28 U.S.C. § 2255.

A motion made pursuant to 28 U.S.C. § 2255 is a collateral attack on a conviction or sentence imposed in a separate proceeding.  To succeed on such a motion, the movant must prove one of the following, that: (1) the conviction or sentence was imposed in

violation of the laws or Constitution of the United States; (2) the court in imposing sentence lacked jurisdiction; (3) the sentence exceeded the maximum authorized by law; or (4) the sentence was otherwise subject to collateral attack. 28 U.S.C. § 2255(a).

The Supreme Court of the United States has "long and consistently affirmed that a collateral challenge may not do service for an appeal." United States v. Frady, 456 U.S. 152, 165 (1982). Petitioners are limited in the issues which may be addressed in cases brought pursuant to § 2255. Petitioners who fail to raise issues on direct appeal or who raise issues on direct appeal which are decided there, are both precluded from addressing those same issues in § 2255 proceedings. "Nonconstitutional claims that **could** have been raised on direct appeal, but were not, may not be asserted in collateral proceedings." Stone v. Powell, 428 U.S. 465, 477, n.10, (1976) (emphasis in original) (citing Sunal v. Large, 332 U.S. 174, 178-79 (1947)); see also United States v. Linder, 552 F.3d 391, 396-97 (4th Cir. 2009) (A petitioner who waives the right to appeal "is not precluded from filing a petition for collateral review. But he is precluded from raising claims that are the sort that **could have** been raised on appeal.") (Quoting Brian R. Means Fed. Habeas Practitioner Guide, Jurisdiction ¶ 1.23.0) (2006-2007) (emphasis in original) (internal citations omitted). Similarly, the Supreme Court has long held that the general rule that "claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice." Massaro v. United States, 538 U.S. 500, 504 (2003).

A constitutional error that could have been, but was not raised on appeal, may not be raised for the first time in a § 2255 motion, unless it passes a two part-test which requires the movant to show either (1) "cause" that excuses the failure to raise the error

on appeal and "actual prejudice" resulting from the error, or (2) that a miscarriage of justice would occur if the court refuses to entertain a collateral attack. (citing Bousley, 523 U.S. at 621-22); Frady, 456 U.S. at 167-68.

The Supreme Court has recognized that it has not strictly defined "cause" because of "the broad range of potential reasons for an attorney's failure to comply with a procedural rule, and the virtually limitless array of contexts in which a procedural default can occur." Reed v. Ross, 468 U.S. 1, 13, (1984) (Citing Wainwright v. Sykes, 433 U.S. 72, 87 (1977). The Supreme Court explained that, "[u]nderlying the concept of cause, however, is at least the dual notion that, absent exceptional circumstances, a defendant is bound by the tactical decisions of competent counsel." Id. (Citing Wainwright v. Sykes, supra, at 91, and n. 14; Henry v. Mississippi, 379 U.S. 443, 451 (1965)). To establish "actual prejudice," contemplated in the first prong, the movant must show that the alleged error resulted in an "actual and substantial disadvantage," rather than a mere possibility of prejudice. Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1977) (quoting Murray v. Carrier, 477 U.S. 478, 494 (1986)).

To demonstrate a miscarriage of justice, contemplated in the second prong, the movant must prove "actual innocence" of the crime for which he was convicted, substantiating that "it is more likely than not, in light of all the evidence, that no reasonable juror would have convicted him." Bousley, 523 U.S. at 623 (quoting Schlup v. Delo, 513 U.S. 298, 327-28 (1995)). "It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency." Bousley, 523 U.S. at 623.

And it is also "well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally

attacked." <u>Mabry v. Johnson</u>, 467 U.S. 504, 508 (1984); <u>Bousley v. United States</u>, 523 U.S. 614, 621 (1998).

## IV.   <u>ANALYSIS</u>

Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and this Court's local rules, this Court is authorized to review Petitioner's motion and submit findings and recommendations to the District Court.   As a *pro se* litigant, Petitioner's pleadings are accorded liberal construction and held to a less stringent standard than formal pleadings drafted by attorneys. <u>Haines v. Kerner</u>, <u>supra</u>.  However, even under this less stringent standard, Petitioner's motion to vacate should be denied.   Petitioner's motion to vacate fails because he is unable to meet the requirements of 28 U.S.C. § 2255 which requires proof that: (1) his conviction or sentence was imposed in violation of the laws or Constitution of the United States; (2) the court in imposing sentence lacked jurisdiction; (3) the sentence exceeded the maximum authorized by law; or (4) the sentence was otherwise subject to collateral attack.

### A.   **Petitioner's sentence was not imposed in violation of the laws or Constitution of the United States.**

Following his guilty plea to bank robbery, Petitioner was sentenced to 240 months of imprisonment on June 3, 2019.  ECF Nos. 103, 106.  The plea agreement included a possible maximum penalty of 20 years and was agreed upon by the parties in the written plea agreement filed with the Court, and as authorized by the controlling statute, 18 U.S.C. § 2113(a).  ECF No. 97.  Although Petitioner was sentenced to the maximum penalty under the plea agreement, the sentence did not exceed the maximum penalty, and was not imposed in violation of the laws or Constitution.

7

**B.      The Court which imposed Petitioner's sentence properly exercised jurisdiction.**

Petitioner was charged with bank robbery in violation of 18 U.S.C. § 2113(a) for an offense which occurred in the Northern District of West Virginia.  ECF No. 1.  He entered a plea of guilty pursuant to a written plea agreement in this district.   ECF No. 97. "The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States."  18 U.S.C. § 3231.  Petitioner's criminal case was properly before the District Court for the Northern District of West Virginia.  Petitioner is unable to demonstrate[5] that the District Court which imposed his sentence was without jurisdiction to do so, and accordingly, in that regard his claim fails.

**C.      Petitioner's Sentence Did Not Exceed the Maximum Authorized by Law**

As discussed in Section IV.A. above, the crime to which Petitioner entered a guilty plea was a violation of 18 U.S.C. §§ 2113(a).  The penalty in Section 2113(a) provides that when an individual is convicted of a violation of the statute, such a person "[s]hall be fined under this title or imprisoned not more than twenty years, or both."

Petitioner was sentenced to 240 months, or 20 years of imprisonment, within the range agreed upon by the parties in the plea agreement.  ECF Nos. 97, 103, 106. Because Petitioner's sentence did not exceed the maximum authorized by law, he is not entitled to relief pursuant to his motion to vacate under 28 U.S.C. § 2255 on this ground.

---

[5] Petitioner's argument that the District Court was without jurisdiction is also addressed in section IV.D. below.

**D.      Petitioner's Sentence Was Not Otherwise Subject to Collateral Attack.**

Petitioner's sentence was not otherwise subject to collateral attack because: (1) he has already raised these issues on direct appeal and been denied relief by the Fourth Circuit; and (2) his counsel was not ineffective.

**1.      Issue Preclusion**

Petitioner has already raised the issue of voluntariness of his plea in the Fourth Circuit.  Issues fully considered on direct appeal from conviction may not be recast under the guise of a collateral attack by way of a motion to vacate or correct sentence. Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976). Counsel, on Petitioner's behalf, filed an Anders brief that did not specifically raise the claim that Petitioner's guilty plea was involuntary. However, Petitioner, in his *pro se* supplemental brief, directly appealed the issue to the Fourth Circuit, which rejected his argument.  The Fourth Circuit stated:

> We also reject Byers' suggestion that his guilty plea was involuntary because . . . he was forced to plead guilty. After reviewing the plea colloquy in accordance with this court's obligations under Anders, and considering the positive solemn declarations Byers made before the magistrate judge regarding his attorney's representation, we discern no plain error with regard to Byers' conviction.

ECF No. 125 at 3.

It is clear that Petitioner in his direct appeal argued that his plea was involuntary. The Fourth Circuit rejected that argument.  Accordingly, the issue of voluntariness of Petitioner's plea was previously fully considered on direct appeal and may not be recast under the guise of a collateral attack by way of a motion to vacate.  Nevertheless, that is exactly what Petitioner seeks to do in this proceeding, in contravention of the holding of

Boeckenhaupt.   Accordingly, Petitioner is precluded from relitigating the issue of voluntariness of his plea, and his motion on this ground should be dismissed.

### 2.   Ineffective Assistance of Counsel Claim

Following his conviction and sentence Petitioner claims that, "Counsel's failure on appeal to raise [a] Faretta claim when [the] defendant unequivocally 'requested to represent himself' constituted a 'structural defect' which denied defendant his fifth amendment due process rights."  ECF No. 140 at 5.   Petitioner's ineffective assistance of counsel claim is without merit.

Petitioner's claim of ineffective assistance of counsel fails because he cannot meet the two-part analysis articulated in Strickland v. Washington, 466 U.S. 668 (1984), which requires that Petitioner show that: (1) his counsel's performance fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 694.  As discussed more fully below, Petitioner has failed to demonstrate that his counsel's performance fell below an objective standard of reasonableness, but even if he had done so, Petitioner has further failed to demonstrate that the result of the proceeding would have been different as a result of such alleged error.

It is well established that the Sixth Amendment guarantees defendants the right to effective assistance of counsel.  McMann v. Richardson, 397 U.S. 759, 771, n. 14 (1970). To succeed on an ineffective assistance of counsel claim, the "petitioner must show, by a preponderance of the evidence, that (1) 'counsel's performance was deficient,' and (2) 'the deficient performance prejudiced the defense.'" Beyle v. United States, 269 F. Supp. 3d 716, 726 (E.D. Va. 2017) (quoting Strickland v. Washington, 466 U.S. 668, 687

(1984)).  "The Petitioner must 'satisfy both prongs, and a failure of proof on either prong ends the matter.'"  Id.  (quoting United States v. Roane, 378 F.3d 382, 404 (4th Cir. 2004)). "Unsubstantiated and largely conclusory statements are insufficient to carry a petitioner's burden as to the two prongs of this test."  Id.  (cleaned up).

A petitioner satisfies the first prong when he shows that counsel's conduct "fell below an objective standard of reasonableness . . . under prevailing professional norms." Strickland, 466 U.S. at 687–88. However, "[j]udicial scrutiny of counsel's performance must be highly deferential" because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." Id.

To satisfy the second prong, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  In doing so, a petitioner must demonstrate that the error worked to his actual and substantial disadvantage, not merely that the error created a possibility of prejudice." Beyle, 269 F. Supp. 3d at 727 (internal citations and quotations omitted).

 "[T]he guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system.  Properly administered, they can benefit all concerned." Blackledge v. Allison, 431 U.S. 63, 71 (1977).  However, the advantages of plea bargains "can be secure . . . only if dispositions by guilty plea are

accorded a great measure of finality."  Id.  "To this end, the Government often secures waivers of appellate rights from criminal defendants as part of their plea agreement." United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005).  Thus, Petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Hill v. Lockhart, 474 U.S. 52, 59 (1985).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Strickland, 466 U.S. at 694.

Petitioner has made no showing that his counsel's performance fell below an objective standard of reasonableness when counsel did not pursue an appeal on the Faretta issue Petitioner selected, whether he should have been permitted to represent himself prior to plea entry.[6]  However, the Supreme Court in both Faretta and a revisitation of the issues in Martinez v. Ct. of Appeal of California, Fourth App. Dist., 528 U.S. 152, 161 (2000), found that "the right to self-representation is not absolute."

In Martinez the Supreme Court explained that a defendant's right to self-representation is limited by circumstances which must be determined by the trial court:

> The defendant must " 'voluntarily and intelligently' " elect to conduct his own defense, and most courts require him to do so in a timely manner.  He must first be "made aware of the dangers and disadvantages of self-representation."  A trial judge may also terminate self-representation or appoint "standby counsel"--even over the defendant's objection--if

---

[6] As to any argument that Petitioner received ineffective assistance at the district court, his claim also fails. The evidence of guilt possessed by the Government was overwhelming, thus Petitioner fails to meet the prejudice prong. At the plea entry hearing, the investigating officer testified that Petitioner was identified as a person of interest from a tip, that Petitioner's social media accounts revealed photos of Petitioner wearing identical and distinctive clothing as that worn by the robber, that a search warrant for Petitioner's home was obtained and executed, that the distinctive clothing worn by the robber was recovered in Petitioner's home, and most importantly, that after being Mirandized, Petitioner confessed to committing the robbery. ECF No. 117 at 23:3 – 27:10. Accordingly, it appears that regardless of whether counsel's assistance was ineffective, the result of the proceeding in the district court would not have been different if Petitioner had different counsel.

necessary.  We have further held that standby counsel may participate in the trial proceedings, even without the express consent of the defendant, as long as that participation does not "seriously undermine" the " appearance before the jury" that the defendant is representing himself.  Additionally, the trial judge is under no duty to provide personal instruction on courtroom procedure or to perform any legal "chores" for the defendant that counsel would normally carry out.  Even at the trial level, therefore, the government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer.

Martinez, 528 U.S. at 161 – 162 (cleaned up).

Petitioner asserts that counsel was ineffective for failing to argue his Faretta claim on appeal.  ECF No. 140 at 5.  However, a review of the record shows that the trial court properly used its discretion to ensure the integrity and efficiency of proceedings.  Further, a review of the sentencing transcript shows that the District Court properly denied Petitioner's request to represent himself even over the defendant's objection.  The following exchange occurred when Petitioner moved the Court to represent himself and the Court denied his motion:

THE COURT: All right.  Mr. Byers, I'm going to ask you to stand and raise your right hand. We're going to get you under oath.

THE DEFENDANT: Your Honor, excuse me.  Can you ask everybody to stand and raise their right hand to take an oath too, please?

THE COURT: Wait. I don't understand what you said. What did you say, sir?

THE DEFENDANT: I said can you ask everybody to please stand up and say their name under oath too?  My counsel and the attorney over there, please.

THE COURT: You want everybody else to stand?

THE DEFENDANT: Yeah.  And say their name and say -- and swear to the oath too.  Take the oath too with me.

THE COURT: These lawyers are required by virtue of their position -- not that I need to explain this but I will -- as officers of the Court to tell the truth.  That's my expectation.  If they lie, they'll lose their license most likely with the Board down -- with

the Ethics Board down in Charleston. So they don't need to stand, and they're not taking any oath. But --

THE DEFENDANT: So they're not going to be under oath today then; right?

THE COURT: Their job and their ethical responsibility is to tell the truth in this court to this Court. If they lie, they've got bigger problems than telling a lie in this case because they're going to lose their law license. So I don't up my attorneys under oath.  I'm not required to.  They're required to tell the truth, and they know that.  So I'm going to ask you to take this oath. Mr. Mullen, go ahead.

THE DEFENDANT:  So for the record, again --

THE COURT:  I'm denying your request, yes, sir.

. . . .

THE COURT: All right. We're here today because we've got a trial coming up on March 7th, but January 28th defendant filed a pro se motion for new counsel to be appointed for him. Ms. Crockett, what's the Government's position on that?

MS. CROCKETT: Your Honor, the Government doesn't have a position on the motion filed.

THE COURT: Okay. No dog in this fight; correct?

MS. CROCKETT: No, Your Honor.

THE COURT: All right. All right. Mr. Byers, why do you want a new attorney?

THE DEFENDANT: Because my attorney already told me for the record that he don't work for me, and he's not filing my motions. So I would like to go pro se.

THE COURT: Well, he has filed motions in this case.

THE DEFENDANT: No, he's not filing the motions I ask him to file, Your Honor.

THE COURT: What do you want him to file?

THE DEFENDANT: I want him to file my bill of particulars and my habeas corpus, 2241.

THE COURT: All right. Mr. Moss.

MR. MOSS: Yes, Your Honor. And, Your Honor, in all candor to the Court, I don't believe I have grounds to move to withdraw from this case. I don't think that there's been a communication breakdown to that extent. What I think we have here is according to Mr. Byers' letter, he wanted me to file motions based on both of those motions he just cited based on this theory that the Government lacks territorial jurisdiction. And of course I have explained to Mr. Byers that jurisdiction -- federal jurisdiction in this case attaches under the Commerce Clause. I provided him case law in support of that.

14

We don't see eye to eye on this, and I believe that is why we're here today. But, again, I don't feel that I have grounds to move to withdraw from the case based on this letter Mr. Byers has sent to the Court.

THE COURT: All right. Thank you, Mr. Moss.

MR. MOSS: Thank you.

THE COURT: Anything further on your motion, Mr. Byers?

THE DEFENDANT: Yeah. I would like to go pro se. I don't need no counsel.

THE COURT: You want to represent yourself?

THE DEFENDANT: Yes.

THE COURT: All right. First of all, do you understand that if you represented yourself, you would have to understand all the rules and procedures –

THE DEFENDANT: Yes.

THE COURT: -- of this Court, and you would you have to follow them?

THE DEFENDANT: Yes.

THE COURT: Do you understand if you went forward representing yourself, you would be required to understand the law in putting on your case? And I couldn't help you just as I can't help Mr. Moss and I can't help Ms. Crockett try their case.

THE DEFENDANT: Yes.

THE COURT: And you've asked Mr. Moss to file a motion that this Court doesn't have territorial jurisdiction?

THE DEFENDANT: Yes.

THE COURT: All right. Based upon the fact that from the inception of your demonstration to the Court that you've got the wherewithal and legal knowledge to represent yourself in court, you don't because this Court has jurisdiction to hear this case. So from the very beginning, you're not moving forward on any legal theory that would hold water. If you were to represent yourself in this court, you would absolutely be convicted; and it could be or would be based upon your lack of the ability to represent yourself. You're entitled to -- so let's move on. You're motion to proceed pro se is denied because I don't think you're able to adequately represent yourself.

THE DEFENDANT: Why not? Because the federal government is (indiscernible) jurisdiction.

THE COURT: I'm not hearing that argument because we've got jurisdiction -- (Simultaneous speech.)

THE COURT: -- here so I'm moving on. We're done. I've ruled. Now, regarding the rest of the issue and not wanting Mr. Moss to represent you, you've got the right to hire an attorney. And if you don't hire an attorney, you're going to

have court-appointed counsel. If you hire an attorney, you get to choose; but if you have court-appointed counsel, you don't get to choose.

Mr. Moss is on the A-list of the criminal defense attorneys that appear before this Court. More than any other lawyers, the lawyers from the Public Defender appear in this court. They probably appear in this court 90 times to 10 compared to how the other court-appointed attorneys appear in this court.  Mr. Moss is exceptional because when he represents a client, he does nearly everything they ask him to do unless it's stepping over the line where he can't legitimately make a straight-faced argument to the Court. And he's required -- just as we talked about his requirement to tell the truth, he also has an obligation to not come into court with a bunch of phony motions and motions that aren't based on law. So he can't file the motions that you're requesting for him to file.  And in making those types of –

THE DEFENDANT: Why not?

THE COURT:  -- legal determinations -- I'm speaking. You're not.  Making those types of legal determinations fall within Mr. Moss's obligations and duties and those are his decisions to make in this case because he's required as an officer of the court not to bring anything before this Court that doesn't hold water.  In addition, Mr. Moss leaves no rock unturned.  He raises more issues before this Court than any other defense attorneys.  He investigates everything not 100 percent, a 110 percent.  Mr. Moss went to Philadelphia and made a video that was probably -- how long, Mr. Moss? Thirty, forty-five minutes long?

MR. MOSS: I believe it was a half an hour, Your Honor.

THE COURT: Looked like something you'd see on Dateline for the Court to review before his client was sentenced. He does everything imaginable, and he works harder than any attorney that appears before this Court, and he's one of the better attorneys that appears before this Court. It sounds to me as though there is not a total lack of communication here. It seems to me as though, and I find, that the disagreement you have with your counsel is you want him to make some motions that don't hold water before this Court; and he can't do that. He can't do that if he doesn't have the law to back it up.

So I'm denying your motion for new counsel as well. And I'm instructing you, Mr. Byers, that you're going to join forces with your counsel –

THE DEFENDANT: No, I'm not.

THE COURT: -- and you're going to communicate –

16

THE DEFENDANT: No, I'm not.

THE COURT: -- significantly with him, and you're going to cooperate with him because you've got a trial coming up on March 7th and a pretrial before that. And to keep this trial on track, you're going to assist your lawyer.

THE DEFENDANT: No, I'm not. Is this an Article III court?

THE COURT: Excuse me?

THE DEFENDANT: Is this Article III court?

THE COURT: Is it what?

THE DEFENDANT: An Article III court. Ordained and established by Congress.

THE COURT: What -- what is he saying?

THE DEFENDANT: Is this court an Article III court, ordained or established by Congress?

THE COURT: I am an Article III court. I'm an Article III judge.

THE DEFENDANT: Okay.

THE COURT: Appointed by President Obama and confirmed by the entire U.S. Senate. This discussion is over –

THE DEFENDANT: Hold on.

THE COURT: -- I have jurisdiction to hear –

THE DEFENDANT: My indictment –

THE COURT: -- this. The defendant is remanded to the custody of the United States Marshals.

ECF No. 146-2 at 3 – 10.    The District Court's determinations regarding Petitioner's request to represent himself match squarely with the holding in <u>Martinez</u>.    The Government's interest in ensuring the integrity and efficiency of the proceedings in Petitioner's case outweighed the defendant's interest in acting as his own lawyer.    During a sentencing hearing Petitioner demanded that all individuals in the courtroom be sworn under oath, refused to recognize that the court had jurisdiction, and appeared to question either the legitimacy or constitutionality of the trial court.    The trial judge's decision to deny Petitioner's motion to represent himself over the defendant's objection appears necessary to maintain the integrity and efficiency of the court and its proceedings.    Accordingly, to the extent that Petitioner claims that his Fifth Amendment rights were violated by the trial court's denial of his motion to represent himself, his claim is without merit.

Further, Petitioner's claim that his counsel provided ineffective assistance when she failed to raise on appeal the same issue of self-representation at the trial court level is without merit.  Petitioner claims that his appellate counsel was ineffective when he failed to make the <u>Faretta</u> argument favored by Petitioner.  ECF No. 140 at 5.  However, the Supreme Court has long recognized that:

> When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect. See *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052 (counsel is "strongly presumed" to make decisions in the exercise of professional judgment). That presumption has particular force where a petitioner bases his ineffective-assistance claim solely on the trial record, creating a situation in which a court "may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive." *Massaro v. United States*, 538 U.S. 500, 505, 123 S.Ct. 1690, 1694, 155 L.Ed.2d 714 (2003). Moreover, even if an omission is inadvertent, relief is not automatic. The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight.

<u>Yarborough v. Gentry</u>, 540 U.S. 1, 8, 124 S. Ct. 1, 5 – 6 (2003).  As noted above, "a defendant is bound by the tactical decisions of competent counsel."  <u>Reed v. Ross</u>, 468 U.S. 1, 13, (1984) (<u>Citing</u> <u>Wainwright v. Sykes</u>, 433 U.S. 72, 91, and n. 14 (1977); <u>Henry v. Mississippi</u>, 379 U.S. 443, 451 (1965)).

As to Petitioner's ineffective assistance of counsel claim, he is unable to meet the two-prong <u>Strickland</u> test to demonstrate that his counsel was ineffective.  Counsel made tactical decisions to raise and argue some issues, to the exclusion of other issues favored by Petitioner.  Those decisions are strongly presumed to have been made in the exercise of professional judgment, and accordingly, counsel's performance in this regard did not fall below an objective standard of reasonableness.  Moreover, there was no reasonable

probability that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different.

As noted above, in <u>Strickland</u>, the Supreme Court held that judicial scrutiny of counsel's performance must be highly deferential and should not second-guess counsel's decisions:

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. . . . [T]hat is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

<u>Strickland v. Washington</u>, 466 U.S. 668, 689 (1984) (internal citations omitted).

In applying <u>Strickland</u> to claims of ineffective assistance of *appellate* counsel, "reviewing courts must accord appellate counsel the presumption that he [or she] decided which issues were most likely to afford relief on appeal." <u>Bell v. Jarvis</u>, 236 F.3d 149, 164 (4th Cir. 2000) (internal citations omitted). "Counsel is not obligated to assert all nonfrivolous issues on appeal." <u>Id.</u> "Winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from evidence of incompetence, is the hallmark of effective appellate advocacy." <u>Smith v. State of S.C.</u>, 882 F.2d 895, 899 (4th Cir. 1989) (internal citations omitted). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." <u>Bell</u>, 236 F.3d at 164 (internal citations omitted).

As seen above, it is well-settled that an appellate attorney has substantial discretion in determining what issues to raise on appeal, and appellate counsel is not required to assert every conceivable claim. Appellate counsel for Petitioner filed an

<u>Anders</u> brief which stated that she had identified no meritorious issues for appeal but identified as potential issues for review whether: (1) the sentence was reasonable; and (2) the district court had jurisdiction.  ECF No. 125 at 2.  The "ignored" issue here is not "clearly stronger" than the issues identified by Counsel for review, such that Petitioner cannot overcome the presumption of effective assistance of counsel.  Petitioner has made no showing that appellate counsel's submission of an <u>Anders</u> brief in this case and failure to challenge the district court's denial of new counsel and self-representation was constitutionally deficient under the performance prong of <u>Strickland</u>.

This Court is not here to second-guess counsel's tactics in the district court or on appeal.  Ultimately, given the outcome, there is no reasonable probability that absent appellate counsel's alleged ineffective assistance that the outcome would have been different.  Accordingly, because Petitioner cannot meet the two-part test articulated in <u>Strickland</u>, this Court finds that he is unable to demonstrate he was denied effective assistance of counsel and his motion to vacate should be denied.

Further, to the extent that Petitioner raised a claim of ineffective assistance distinctive from his <u>Faretta</u> claim, instead based on his appellate counsel's failure to appeal the district court's orders which denied Petitioner new counsel and the right to represent himself, he is still not entitled to relief.  Petitioner cannot demonstrate a reasonable probability that, but for his counsel's failure to appeal the orders denying Petitioner new counsel and self-representation, the result of the appeal would have been any different.  Petitioner filed a *pro se* supplemental brief in which he argued on appeal that the district court erroneously denied his motion for a new attorney.  ECF No. 125 at 2.  The Fourth Circuit considered and rejected this argument, finding that the district court

did not abuse its discretion in denying the motion for new counsel.  Id. at 4.  Thus, appellate counsel's failure to argue this point on appeal did not prejudice Petitioner's defense because the Fourth Circuit nevertheless considered it in Petitioner's supplemental brief.  Given the Fourth Circuit's decision, it appears that the outcome would have been the same on this issue whether Petitioner or his attorney raised the claim.

As for Petitioner's request to represent himself, which he made during the motion hearing for new counsel, the district court considered the request and denied it, reasoning in part, "[i]f you were to represent yourself in this court, you would absolutely be convicted; and it could be or would be based upon your lack of the ability to represent yourself."  ECF No. 134 at 6.  Petitioner argues that "Counsel's failure to raise the denial of Petitioner's right to self-representation to protect his liberty interest on direct appeal was prejudicial because [he] would have succeeded on appeal."[7]  ECF No. 147 at 2.  While the Fourth Circuit did not directly address Petitioner's motion to represent himself, such a denial was also well within the sound discretion of the district court, and the petitioner has failed to show a reasonable probability that the Fourth Circuit would have held otherwise.  See United States v. Hilton, 701 F.3d 959, 965 (4th Cir. 2012) (noting that "a defendant's request for self-representation is a matter submitted to the sound discretion of the trial court"); see also United States v. Bernard, 708 F.3d 583, 588 (4th Cir. 2013) (internal citations omitted) (noting that "the Faretta right to self-representation is not absolute").

In sum, Petitioner's claim that he received ineffective assistance of counsel because Counsel did not appeal the district court's orders denying him new counsel and

---

[7] "Unsubstantiated and largely conclusory statements are insufficient to carry a petitioner's burden as to the two prongs of this test."  Fields, 956 F.2d at 1297.

self-representation should be dismissed as Petitioner has failed to satisfy both the performance and prejudice prong of <u>Strickland</u>.

Furthermore, even if counsel's actions were deemed to fall below an objective standard of reasonableness, Petitioner is unable to demonstrate that the result would have been different.   Accordingly, Petitioner's allegation of ineffective assistance of counsel is without merit.

## V.   RECOMMENDATION

For the foregoing reasons, the undersigned RECOMMENDS that Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [ECF No. 1 in 3:21-CV-17; ECF No. 140 in 3:18-CR-62] be **DENIED** and **DISMISSED WITH PREJUDICE**.

Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of this Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection**. A copy of such objections should also be submitted to the Honorable Gina M. Groh, Chief United States District Judge. **Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals**. <u>See</u> 28 U.S.C. § 636(b)(1); <u>Wright v. Collins</u>, 766 F.2d 841, 845-48 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91, 94 (4th Cir. 1984), <u>cert. denied</u>, 467 U.S. 1208 (1984); <u>see also</u> <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985).

The Court directs the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record, as provided in the Administrative Procedures

for Electronic Case Filing in the United States District Court for the Northern District of West Virginia. Further, because this Report and Recommendation completes the referral from the District Court, the Clerk is directed to terminate the Magistrate Judge association with this case.

DATED:   1-20-22

ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE

23